IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

WALTER THARRINGTON,

Defendant.

CRIMINAL ACTION
NO. 24-310

## OPINION

**Slomsky, J.**                                                            **August 22, 2025**

## TABLE OF CONTENTS

**I.      INTRODUCTION AND BACKGROUND** ................................................................ 2

**II.     STANDARD OF REVIEW** ........................................................................... 5

    A.   Motion for Judgment of Acquittal ................................................................ 5

    B.   Motion for New Trial ................................................................................ 6

**III.    ANALYSIS** ........................................................................................ 6

    A.   Sufficient Evidence Supports the Guilty Verdict on Count One ............................... 7

    B.   Insufficient Evidence Was Presented to Support the Guilty Verdict on
        Count Three ......................................................................................... 10

    C.   Sufficient Evidence Supports the Guilty Verdict on Count Four ............................ 17

    D.   Defendant Was Afforded a Fair Trial ......................................................... 19

**IV.     CONCLUSION** ................................................................................... 23

## I.    INTRODUCTION AND BACKGROUND

Before the Court is Defendant Walter Tharrington's ("Defendant") Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29 and/or a Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33.  (Doc. No. 110.)  As previously summarized by the Court:

> On August 28, 2024, a grand jury in the United States District Court for the Eastern District of Pennsylvania returned a four-count indictment charging Defendant . . . with the following: (1) sex trafficking of a minor . . . and attempt, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), (b)(2), (c) and 1594(a) ["Count One"]; (2) manufacturing child pornography, in violation of 18 U.S.C. § 2251(a) ["Count Two"]; (3) advertising child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A) ["Count Three"]; and (4) possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) ["Count Four"].  (See Doc. No. 1.)  These charges stem from Defendant's alleged conduct with a minor ("Minor 1"), including purportedly taking explicit pictures and videos of Minor 1 at his residence and posting these pictures and videos as advertisements on Megapersonals.eu ("Megapersonals"), a commercial sex website. (See id.; Doc. No. 27 at 3.)

(Doc. No. 76 at 3-5.)

Before trial, Defendant filed several motions, including a Motion to Suppress Custodial Statements, a Motion to Suppress Physical Evidence, and a Motion to Exclude Expert Testimony. (See Doc. Nos. 25, 26, 65.)  These Motions met varying levels of success.  Specifically, the Court granted in part and denied in part Defendant's Motions to Suppress, excluding in large part Defendant's custodial statements as well as evidence from one of two iPhones the Government seized when executing a search warrant at Defendant's residence.  (See Doc. Nos. 66, 67, 75, 76.)  However, the Court denied Defendant's Motion to Exclude Expert Testimony.  (See Doc. No. 72.)

On April 2, 2025, a five-day jury trial began.  (See Doc. Nos. 100, 101, 102, 103, 104, 105.)  This Court presided over the case at trial, listened to the testimony of Government and defense witnesses, and examined the documents received in evidence.  On April 9, 2025, after deliberating for approximately 3.5 hours, the jury found Defendant guilty of the following offenses:  (1) sex

trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (c) ("Count One");[1] (2) advertising

child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A) ("Count Three");[2] and (3) possession

---

[1]    18 U.S.C. § 1591 provides in pertinent part as follows:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;

\*\*\*

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

\*\*\*

(c) In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

18 U.S.C. §§ 1591(a)(1), (c).

[2]    18 U.S.C. § 2251(d) provides:

(d)

(1) Any person who, in a circumstance described in paragraph (2), knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering—

(A) to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; or

of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) ("Count Four").[3]  (See Doc. No.

110 at 5.)  The jury acquitted Defendant of the offense charged in Count Two, manufacturing child

pornography under 18 U.S.C. § 2251(a).  (Id. at 6.)  In addition, on Count One, the jury found

---

> (B) participation in any act of sexually explicit conduct by or with any minor
> for the purpose of producing a visual depiction of such conduct;
>
>   shall be punished as provided under subsection (e).
>
> (2) The circumstance referred to in paragraph (1) is that—
>
> (A)  such person knows or has reason to know that such notice or
> advertisement will be transported using any means or facility of interstate or
> foreign commerce or in or affecting interstate or foreign commerce by any
> means including by computer or mailed; or
>
> (B) such notice or advertisement is transported using any means or facility of
> interstate or foreign commerce or in or affecting interstate or foreign
> commerce by any means including by computer or mailed.

[3]  18 U.S.C. § 2252(a)(4)(B) provide as follows:

> (a) Any person who—
>
> (4) either—
>
> (A) [omitted]; or
>
> (B) knowingly possesses, or knowingly accesses with intent to view, 1 or
> more books, magazines, periodicals, films, video tapes, or other matter which
> contain any visual depiction that has been mailed, or has been shipped or
> transported using any means or facility of interstate or foreign commerce or
> in or affecting interstate or foreign commerce, or which was produced using
> materials which have been mailed or so shipped or transported, by any means
> including by computer, if—
>
>   (i) the producing of such visual depiction involves the use of a minor
>   engaging in sexually explicit conduct; and
>
>   (ii) such visual depiction is of such conduct;
>
> shall be punished as provided in subsection (b) of this section.

Defendant had not caused Minor 1 to engage in a commercial sex act by force, fraud, or coercion, finding instead that Defendant caused Minor 1 to engage in a commercial sex act while knowing, or recklessly disregarding the fact, that she had not attained the age of 18 years.

On June 27, 2025, Defendant filed the instant Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29 and/or a Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33. (Doc. No. 110.) On July 25, 2025, the Government filed a Response in Opposition. (Doc. No. 112.) And on August 1, 2025, Defendant filed a Reply. (Doc. No. 113.) The Motion (Doc. No. 110) is now ripe for disposition, and for reasons stated below, will be granted in part and denied in part.

## II.    STANDARD OF REVIEW

### A.    Motion for Judgment of Acquittal

Under Rule 29(c) of the Federal Rules of Criminal Procedure, a defendant may file a motion for judgment of acquittal, after a jury has reached its verdict, based on insufficient evidence presented at trial. See Fed. R. Crim. P. 29(c). On a motion for judgment of acquittal under Rule 29(c), the court must decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" based on the evidence presented at trial. United States v. Caraballo-Rodriguez, 726 F.3d 418, 431 (3d Cir. 2013) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis omitted); see also United States v. Freeman, 763 F.3d 322, 343 (3d Cir. 2014). The court must view the evidence in a light most favorable to the prosecution and must deny the motion "if there is substantial evidence . . . to uphold the jury's decision." Caraballo-Rodriguez, 726 F.3d at 430 (quoting United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003)).

### B.    Motion for New Trial

Pursuant to Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Granting or denying a motion for a new trial "lies within the discretion of the district court."  United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006).  Unlike in a Rule 29 motion for judgment of acquittal, "when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case."  United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002) (citing United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000)).  A court may "order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted . . . ."  United States v. Silveus, 542 F.3d 993, 1004-05 (3d Cir. 2008) (citing Johnson, F.3d at 150).

## III.    ANALYSIS

In the Motion for Judgment of Acquittal, Defendant argues the Court should acquit him of the convictions in Counts One, Three, and Four because the Government did not present sufficient evidence to sustain these convictions.  (Doc. No. 110 at 6.)  Alternatively, in the Motion for a New Trial, he argues he is entitled to a new trial because the verdicts in Counts One, Three, and Four were against the weight of the evidence.  (Id. at 16.)  He additionally argues he is entitled to a new trial because "he was deprived of his constitutional right to a fair trial because of the manner in which the government dispensed its discovery obligations, because he was denied a jury of his peers, and because of certain evidentiary errors."  (Id. at 26.)  The Court will address each argument in turn.

**A.     Sufficient Evidence Supports the Guilty Verdict on Count One**

As mentioned, at the conclusion of trial, the jury returned a verdict finding Defendant guilty of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and (c).  Section 1591(a)(1) prohibits persons from transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting a person under the age of 18 while knowing that person has not attained the age of 18 and will be caused to engage in a commercial sex act.  See 18 U.S.C. § 1591(a)(1).  Defendant first argues he should be acquitted of this conviction under Federal Rule of Criminal Procedure 29 because "[t]he only evidence that could conceivably support a guilty verdict comes from uncorroborated[] fact witnesses" whose testimony "was so wildly contradictory that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Doc. No. 110 at 15-16.)  Defendant also asserts that these witnesses "lack credibility." (Id. at 18.)

But because the jury clearly found the witnesses credible, as evident by their finding Defendant guilty of sex trafficking Minor 1, the Court will not disturb their verdict on Count One. When assessing a Rule 29 motion, the "district court may not make credibility determinations" and is instead "confined solely to its assessment of the sufficiency of the Government's evidence." U.S. v. Giampa, 758 F.2d 928, 935 (3d Cir. 1985).

Here, the Government presented evidence that Defendant "knew Minor 1 had not obtained the age of 18 years and would be caused to engage in commercial sex." (Doc. No. 112 at 16.) Specifically, the Government's witnesses testified to the following:

> Minor 1, Taraji Daniels, Minor 2, and all of the law enforcement witnesses acknowledged that they knew Minor 1 was under 18 years old. Minor 1, Daniels and Minor 2 testified that they witnessed, first-hand, [Defendant] causing, or attempting to cause, Minor 1 to engage in commercial sex. Any juror could have reasonably found that [Defendant] knew Minor 1 was under the age of 18 because she testified that she told him so, and he had a reasonable opportunity to observe Minor 1 because she was living at his house and he engaged in sexual intercourse with her on multiple occasions.

\*\*\*

> [Shadeena] Butler's testimony corroborated Minor 1's account that she was with [Defendant] during the relevant time period of the offense conduct charged in the indictment. Butler stated that [Defendant] brought Minor 1 to Butler's home in December 2023, and that Butler recognized that Minor 1 was of youthful appearance. Butler testified that Minor 1 explained she needed help making money so she could pay back [Defendant] for helping her, and that Butler used her own photo so Minor 1 could access Megapersonals to engage in prostitution. Butler also stated that [Defendant] contacted her and instructed her not to say anything to the police about him and Minor 1. Butler's testimony corroborated the purported motivation for Minor 1 to engage in commercial sex at [Defendant's] direction – Minor 1 had to pay him back – and Butler's testimony provided insight into [Defendant's] guilty conscience when he instructed Butler not to cooperate with the police after his arrest in February 2024.

(Id. at 16, 21-22.)  This testimony was corroborated by other evidence, namely "the Megapersonals advertisements, the contents of [Defendant's] iPhone and Shadeena Butler's testimony all supported the conclusion that [Defendant] engaged in sex trafficking of Minor 1." (Id.)  Therefore, viewing this evidence in the light most favorable to the Government, a rational juror could have concluded that the Government proved beyond a reasonable doubt that Defendant sex trafficked Minor 1 knowing she was under the age of 18.

Next, Defendant argues that, if he is not acquitted of this conviction under Rule 29, he should at least be afforded a new trial under Rule 33 because "the weight of the evidence in this case points to Taraji Daniels, not [Defendant] as trafficking [Minor 1]."  (Doc. No. 110 at 18.)  In support of this argument, Defendant again takes issue with the credibility of the Government's witnesses, pointing to their purportedly contradictory testimony and "unclean hands."  (Id. at 18-21.)

On a Rule 33 motion for a new trial where the defendant takes issue with the witnesses' credibility, "[t]he district court must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury."  U.S. v. Ferguson, 246 F.3d 129, 133

(2d Cir. 2001). "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, '[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'" Id. at 133-34 (alteration in original). "An example of exceptional circumstances is where testimony is 'patently incredible or defies physical realities,' although the district court's rejection of trial testimony by itself does not automatically permit Rule 33 relief." Id. at 134.

Here, because the Government witnesses' testimony was not "patently incredible" nor "defie[d] physical realities" and no other exceptional circumstances exist, the Court will defer to the jury's resolution of the purportedly conflicting testimony and their assessment of the witnesses' credibility. As discussed above, Minor 1 testified that [Defendant] directed her to engage in commercial sex. (See Doc. No. 103 at 36:17-37:22, 38:6-24, 24:18-26:13, 28:19-29:14, 30:1-31:11.) Her testimony was then corroborated by Taraji Daniels' testimony. (See Doc. No. 104 at 92:11-24, 94:5-95:8.) And as noted above, "[Shadeena] Butler's testimony corroborated Minor 1's account that she was with [Defendant] during the relevant time period of the offense conduct charged in the indictment." (Doc. No. 112 at 21-22.)

While Defendant highlights certain testimony that was purportedly contradictory to other testimony and argues the Government's witnesses had "unclean hands" in the sex trafficking industry, implying they lied in their testimony in order to continue "financially benefitting from their scheme," this is the same theory Defendant presented at trial and the same theory that was rejected by the jury when they found Defendant guilty on Count One. (See Doc. No. 110 at 18-23.) Therefore, because the Court will defer to the jury's resolution of the purportedly conflicting testimony and their assessment of the witnesses' credibility, the weight of the evidence is not against the verdict and the interests of justice do not require that Defendant be afforded a new trial.

Accordingly, the Court will deny Defendant's Motion for Judgment of Acquittal and for a New Trial (Doc. No. 110) on Count One.

**B.    Insufficient Evidence Was Presented to Support the Guilty Verdict on Count Three**

The jury also found Defendant guilty of advertising child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A). Section 2251(d)(1)(A) prohibits persons from knowingly publishing "any notice or advertisement <u>seeking or offering</u> to . . . distribute . . ." child pornography.[4] 18 U.S.C. § 2251(d)(1)(A) (emphasis added). But because there was no evidence presented at trial that Defendant was seeking or offering to distribute child pornography, no rational juror could find that Defendant was advertising child pornography in violation of § 2251(d)(1)(A).

In this case, the Government relied on the theory under § 2251(d)(1)(A) that the "advertisement so[ught] or offered to receive, exchange, or distribute any visual depiction." (<u>See</u> Doc. No. 105 at 127:24-25.) They did not rely upon the theory that the advertisement sought or offered "to . . . buy, produce, display . . . or reproduce" child pornography. <u>See</u> 18 U.S.C. § 2251(d)(1)(A). This is supported by the fact that the jury was charged as follows on the Count Three charge of advertising child pornography:

> Count Three of the indictment charges the defendant with advertising child pornography in violation of federal law. In order to prove the defendant guilty of advertising child pornography, the government must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant knowingly made or published, or caused to be made or published a notice or advertisement;
>
> Second, that the notice or advertisement sought or offered to <u>receive, exchange, or distribute</u> any visual depiction, if the production of the visual depiction utilized a

---

[4]    Section 2251(d)(1)(A) specifically prohibits persons from "knowingly mak[ing], print[ing], or publish[ing], or caus[ing] to be made, printed, or published, any notice or advertisement seeking or offering . . . <u>to receive, exchange, buy, produce, display, distribute, or reproduce</u>" child pornography. 18 U.S.C. § 2251(d)(1)(A) (emphasis added).

minor engaging in sexually explicit conduct and such visual depiction is of such conduct; and

Third, the defendant knew or had reason to know the notice or advertisement would be transported in interstate or foreign commerce including by computer or other means, or such notice or advertisement was actually transported in interstate or foreign commerce by computer or other means.

(Doc. No. 105 at 127:14-128:8 (emphasis added).)  The Government did not object to this jury charge on Count Three.[5]  And the verdict sheet on Count Three read:

**Count Three – Advertising Child Pornography**

On Count Three of the indictment, charging the defendant with advertising child pornography on or about July 24, 2023, we, the jury, unanimously find the Defendant, Walter Tharrington:

Not Guilty _____          Guilty _____

The jury checked guilty.

Despite the three categories of receiving, exchanging, or distributing relied upon by the Government, it contends there was sufficient evidence for a jury to conclude that Defendant violated § 2251(d)(1)(A) because it presented evidence that Defendant posted advertisements containing explicit videos and pictures of Minor 1 to Megapersonals for the purpose of soliciting her for commercial sex.  (See Doc. No. 112 at 7.)  In the Government's words, "[D]efendant's advertisements sought to distribute, and did distribute, child pornography to the user because the video played when the advertisement was accessed and viewed."  (Id. at 9.)

---

[5]    Count Three of the Indictment did charge Defendant in part with "seeking and offering to receive, exchange, display, distribute, and reproduce visual depictions of Minor 1 engaging in sexually explicit conduct."  (Doc. No. 1 at 4.)  But the Government never sought a jury charge on Count Three on the elements of "buy, produce, display . . . or reproduce" child pornography. See 18 U.S.C. § 2251(d)(1)(A); (Government's Request for a Jury Instruction No. 47, Doc. No. 49 at 64.)  Defendant benefited by the Government's failure to pursue the elements not included in its jury instruction.

11

Defendant does not dispute that the commercial sex advertisements contained child pornography. Instead, he submits that "[s]tanding alone, the . . . distribution . . . of child pornography on a website does not offend 18 U.S.C. § 2251(d)(1)(A) because the <u>actus</u> <u>reus</u> qualifiers of <u>seeking</u> or <u>offering</u> are absent." (Doc. No. 113 at 2 (emphasis in original).) "[E]ven assuming [Defendant] posted the . . . advertisements for commercial sex on Megapersonals, there is no evidence that the advertisements <u>sought</u> or <u>offered</u> to distribute child pornography." (<u>Id.</u> at 4 (emphasis in original).)

Based on these arguments, the crux of the issue here is whether an online advertisement containing child pornography falls under § 2251(d)(1)(A)'s prohibition of advertisements <u>offering or seeking</u> child pornography. Because this issue turns on the meaning of "offering or seeking" in § 2251(d)(1)(A), it is an issue of statutory construction, requiring the Court to begin its analysis by looking at the plain language of the statute. <u>See</u> <u>U.S. v. Husmann</u>, 765 F.3d 169, 172-73 (3d Cir. 2014); <u>see also</u> <u>Peralta-Taveras v. Att'y Gen.</u>, 488 F.3d 580, 584 (2d Cir. 2007) ("[T]he well-established rules of statutory construction . . . instruct that our inquiry begins with the plain language of the statute and 'where the statutory language provides a clear answer, it ends there as well.'")

As an initial matter, the full text of Section 2251(d)(1)(A) provides as follows:

(d)

    (1) Any person who, in a circumstance described in paragraph (2), knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement <u>seeking or offering</u>—

        (A) to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct;

18 U.S.C. § 2251(d)(1)(A) (emphasis added).  The Government argues that "[t]he statute's plain text provides that it is illegal to 'display,' 'distribute' or 'reproduce' child pornography in an advertisement that is available by access through a computer."  (Doc. No. 112 at 10.)  But the Government did not present the case to the jury on theories of displaying or reproducing.  In any event, this argument ignores the verbs "seeking or offering" that immediately precedes "display," "distribute," and "reproduce" in the statute's text.  Read in context of these verbs and focusing on the Government's theory of advertisement, the statute's plain text instead provides that it is illegal to seek or offer to distribute child pornography.

Moreover, because the statute itself does not define "seeking" or "offering," the Court will construe the meaning of these terms "in accordance with [their] ordinary meaning."  Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 553 (2014).  Courts "look to dictionary definitions to determine the ordinary meaning of a word."  Husmann, 765 F.3d at 173.  As relevant here, Merriam-Webster provides several definitions for "seek," including "to ask for[;] request" and "to try to acquire or gain."  Seek, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/seek (last visited August 11, 2025).  In addition, Black's Law Dictionary defines "offer" as "[t]he act or an instance of presenting something for acceptance; specif[ically], a statement that one is willing to do something for another person or to give that person something[.]"  Offer, BLACK'S LAW DICTIONARY (12th ed. 2024).  And Merriam-Webster provides the following definitions, among others, for "offer":  "propose, suggest"; "to declare one's readiness or willingness"; and "to make available."  Offer, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/offer (last visited August 11, 2025).  Thus, based on these definitions, § 2251(d)(1)(A)'s prohibition of advertisements seeking or offering child pornography prohibits requests for child pornography as well as a statements, proposals,

13

suggestions, or declarations that one is willing to give child pornography to another.  See Husmann, 765 F.3d at 174 (characterizing § 2251(d)(1)(A) as "prohibiting offers to distribute child pornography").

The statutory context further confirms this understanding of "seeking or offering" as used in § 2251(d)(1)(A).  As noted above, this prohibition against advertisements seeking or offering to distribute child pornography is found in 18 U.S.C. § 2251(d)(1)(A).  But in the same statutory scheme, Congress separately prohibited the actual distribution of child pornography.  See 18 U.S.C. § 2252(a)(2)(A) (prohibiting "knowingly receiv[ing], or distribut[ing], any visual depiction . . . if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct"); see also 18 U.S.C. § 2252A(a)(2)(B) (prohibiting "knowingly receiv[ing] or distribut[ing] any child pornography . . .").

In addition, Congress assigned disparate sentencing consequences for the advertisement of child pornography and the distribution of child pornography.  Specifically, the mandatory minimum for advertising child pornography in violation of § 2251(d)(1)(A) is 15 years, while the mandatory minimum for distributing child pornography in violation of § 2252(a)(2)(A) or § 2252A(a)(2)(B) is 5 years.  See 18 U.S.C. §§ 2251(e), 2252(b)(1), 2252A(b)(1).  As such, because Congress has separately criminalized advertisements seeking or offering to distribute child pornography and the actual distribution of child pornography, the prohibition of "advertisement[s] seeking or offering to . . . distribute" child pornography under § 2251(d)(1)(A) cannot be read as encompassing the actual distribution of child pornography.  See U.S. v. Pabon-Cruz, 255 F. Supp. 2d 200, 209 (S.D.N.Y. 2003) ("Unlike the conduct prohibited by § 2252A(a)(2)(B), which involves the actual distribution or receipt of [child pornography] materials . . . the conduct at issue in

§ 2251(d)(1)(A) involves merely the public statement of one's willingness to be involved with child pornography in the specified ways.")

However, while the offense of advertising child pornography is separate from the offense of distributing child pornography, courts have held that there is "no requirement that an advertisement must specifically state that it offers or seeks a visual depiction" or that "particular magic words or phrases needed to be included" for the advertisement at issue to violate § 2251(d)(1)(A). U.S. v. Rowe, 414 F.3d 271, 277 (2d Cir. 2005). Rather, whether a particular advertisement offends § 2251(d)(1)(A) depends on its context. See id. at 273 (concluding the defendant violated the statute now denominated as § 2251(d) when he posted " . . . Offering: Pre boys/girl pics . . ." in a chat room devoted to the exchange of child pornography, because even though the post did not expressly offer child pornography, a person viewing the post in context of the chat room would understand that the defendant's "decision to place into this forum his notice that he was 'Offering: Preboys/girl pics' could have had only a single purpose—to advise others that he had child pornography available for trade"); U.S. v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008) (concluding the defendant violated § 2251(d)(1)(A) when he shared files in a peer-to-peer file sharing program because the shared files contained descriptive fields indicating to viewers that they contained child pornography); U.S. v. Yong Wang, No. 11 Cr. 730, 2013 WL 452215, at *14 (S.D.N.Y. Feb. 5, 2013) (concluding the defendant violated § 2251(d)(1)(A) when he posted links containing descriptive titles such as "Young Young Empire," "Young Girl Beauty Photos Military Region," an "Young Boy Movie Zone" on child pornography websites).

Here, considering the Court's construction of § 2251(d)(1)(A) and viewing the evidence in the light most favorable to the Government, there was insufficient evidence presented at trial for a

rational juror to find Defendant guilty of advertising child pornography under § 2251(d)(1)(A). The Government summarized the relevant evidence presented at trial as follows:

> The evidence established that videos of Minor 1 engaged in oral sex were posted as advertisements on Megapersonals.com, and that images of Minor 1's vagina and buttocks also accompanied similar advertisements on Megapersonals.

> \*\*\*

> The evidence established that when a user browsed Megapersonals and accessed the defendant's advertisement the user was led to a video depicting Minor 1 engaging a penis in oral sex . . . The same applied to the images of Minor 1's vagina and buttocks that appeared in additional advertisements the defendant posted to Megapersonals.

(Doc. No. 112 at 6, 9.)

But based on the content of the advertisements and their context on Megapersonals, these advertisements were not "seeking or offering to . . . distribute" child pornography, nor would they be understood by a viewer as such.  Unlike the posts in Rowe, Sewell, and Yong Wang that contained descriptors indicating to viewers that the posts were seeking or offering to distribute child pornography, nothing in the advertisements at issue here indicate that the post sought or offered to distribute child pornography.  Instead, as characterized by the Government, "the advertisements themselves were overt solicitations to engage commercial sex dates [with Minor 1], as each advertisement included obvious sexually charged verbiage, sexual menu items, and a phone number to contact to arrange a date."  (Id. at 8.)  Additionally, while the advertisements contained sexually explicit videos and images of a minor, nothing in the advertisements, videos, or images signaled to the viewer that the person depicted was a minor.

Moreover, also unlike the posts in Rowe and Yong Wang, the context of the advertisements here would not signal to a viewer that they were seeking or offering to distribute child pornography. While the posts in Rowe and Yong Wang were posted in a chat room known for trading child

pornography images and on child pornography websites, respectively, the advertisement here was posted to Megapersonals. And the evidence presented at trial established that Megapersonals is a commercial sex website, rather than a child pornography website. (See Doc. No. 102 at 61:21-62:20.) Further, the evidence demonstrated that Megapersonals "has restrictions to avoid minors being sold for commercial sex," including age verification software to ensure that the person posting on Megapersonals was at least 18 years old. (See id. at 62:10-12; 119:12-25.) As such, based on this context, a person viewing the Megapersonals advertisements would not infer that the pornography contained in the ads depicted a minor, much less that they were seeking or offering to distribute child pornography.

Thus, because there is insufficient evidence for a rational juror to find that Defendant was seeking or offering to distribute child pornography, as required by § 2251(d)(1)(A), the Court will grant Defendant's Motion for Judgment of Acquittal on Count Three.

### C.    Sufficient Evidence Supports the Guilty Verdict on Count Four

The jury also found Defendant guilty of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). As phrased by Defendant, "[i]n order to convict [Defendant] of possession of child pornography, the government was required to prove that [Defendant] knowingly had the ability and intention to exercise control over the pornographic material." (Doc. No. 110 at 14.) Defendant argues he should be acquitted of the conviction on Count Four under Federal Rule of Criminal Procedure 29 because the Government failed to meet this burden since "[t]here is no evidence to suggest that [Defendant] knowingly had the ability or intention to control the images." (Id. (emphasis in original).) In support of this argument, Defendant contends the evidence shows "that [Minor 1] had intimate knowledge of these photos, admitted to taking some of them, and utilized a phone given to her by [Defendant]" which combined with "the fact that other women had control of [the oral sex video posted to Megapersonals as part of an advertisement soliciting

Minor 1 for commercial sex] in their group chat," shows that "the government failed to prove that [Defendant] knowingly had the ability to or intended to exercise control of the images." (Id. at 15.)

> In response, the Government points to the following evidence introduced at trial:

> The testimony was clear that the iPhone Xr [which contained images of child pornography] was located on the defendant's bed in his bedroom and the government soundly attributed that cellphone to him by introducing indicia of ownership that was stored inside the cellphone, to include photographs of the defendant's driver's license and social security card, a copy of his resume, stored credit card information in his name, and data detailing the iPhone's registration in his name. There were also photographs of the defendant and Minor 1 stored on the iPhone, as well as a photograph of Minor 1 holding up a sign that listed the defendant's email address, roaadblock@gmail.com, and a photo of the defendant and Minor 1 sitting on the defendant's bed in his bedroom. Special Agent Daniel Johns testified extensively about the contents of the iPhone Xr, and how the images and information associated with the defendant were stored on the iPhone. Indeed, even the defendant's expert agreed that Agent Johns' testimony was accurate in all respects.

(Doc. No. 112 at 14-15.)  Based on the guilty verdict reached by the jury on Count Four, it is clear they believed the iPhone Xr was at least constructively possessed by Defendant and that he knowingly possessed the pornographic images contained within the iPhone.[6]  While Defendant points to alternative evidence suggesting that the pornographic images on the iPhone Xr were not produced or controlled by Defendant, this evidence does not change the fact that, when viewing the evidence in the light most favorable to the Government, a rational juror could find that Defendant possessed child pornography.

Defendant alternatively argues he should be afforded a new trial under Federal Rule of Criminal Procedure 33 on Count Four "[f]or the same reasons set forth in the Rule 29 motion, namely there is no credible evidence that [Defendant] knowingly had the ability and intention to

---

[6]  The Court instructed the jury that both constructive possession and joint possession could meet § 2252(a)(4)(B)'s requirement that Defendant "possess" the child pornography.  (See Doc. No. 105 at 129:14-130-8.)

exercise control over the pornographic material."  (Doc. No. 110 at 25.)  But as noted above, "courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, '[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'"  Ferguson, 246 F.3d at 133-34 (alteration in original).  But because such exceptional circumstances do not exist in this case, the Court will again defer to the jury's determinations on the purportedly conflicting evidence and assessment of the witnesses' credibility.

As noted above, the Government presented evidence at trial that the iPhone Xr contained child pornography.  In addition, it presented evidence that this iPhone belonged to Defendant, including evidence of the following:  the iPhone was found in a bedroom that witnesses testified belonged to Defendant and the phone contained indicia of Defendant's ownership, including photos of Defendant's driver's license, his social security card, a copy of his resume, stored credit card information in his name, and data detailing that the iPhone's registration was in his name. (See Doc. No. 112 at 14, 26.)  Based on such evidence and because the Court will defer to the jury's assessments of the conflicting evidence and witnesses' credibility, it is clear that the weight of the evidence supports the jury's verdict on Count Four, meaning there is no "serious danger that a miscarriage of justice has occurred" on this count.  See Silveus, 542 F.3d at 1004-05.

Accordingly, the Court will deny Defendant's Motion for Judgment of Acquittal and for a New Trial (Doc. No. 110) on Count Four.

### D.    Defendant Was Afforded a Fair Trial

As noted above, Defendant additionally argues that a new trial is warranted under Federal Rule of Criminal Procedure 33 because "he was deprived of his constitutional right to a fair trial because of the manner in which the government dispensed its discovery obligations, because he

19

was denied a jury of his peers, and because of certain evidentiary errors." (Doc. No. 110 at 26.)
The Court disagrees.

First, the Government did not deprive Defendant of a fair trial through the way in which it
dispensed its discovery obligations. Defendant argues "[b]ecause the nature and location of the
discovery in this case, proper trial presentation was frustrated." (Id.) Specifically, Defendant
complains that "the initial discovery disclosure consisted of several hundred pages," that the
pertinent information in this disclosure "was so heavily redacted there was no meaningful way to
make sense of the relevant evidence," that the Government "was unaware that certain evidence
was relevant and/or even existed" and was thus delayed in its production of this evidence, and
finally that it was challenging "to meaningfully review the electronic data extracted from cellular
telephones which the FBI retained in its exclusive possession," as required by law because the data
from the phones contained child pornography. (Id. at 26-27; Doc. No. 112 at 28.)

But Defendant raised these same grievances during several hearings leading up to trial and
in his Motion to Compel. (See, e.g., Doc. Nos. 35, 36, 44, 56.) In response, the Court ordered the
Government to comply with Defendant's production request where it had not already done so.
(See Doc. No. 73.) And while Defendant's counsel, and every party involved in this case, certainly
had an accelerated timeline to prepare for trial, Defendant "was provided with everything he
needed to advance suppression motions and proceed to trial," even succeeding at having certain
evidence suppressed. (Doc. No. 112 at 28.) Moreover, to the extent Defendant complains that the
Government did not comply with its obligations under Federal Rule of Criminal Procedure
12(b)(4)(B), requiring the Government to provide notice of its intent to offer evidence, this
obligation is "a matter of procedure, rather than a rule designed to ensure fairness at trial." U.S.

v. de la Cruz-Paulino, 61 F.3d 986, 993 (1st Cir. 1995).  As such, Defendant's renewed complaints about discovery do not warrant a new trial.

Second, Defendant was not denied a jury of his peers.  Defendant submits that "the panel of jurors did not comprise a jury of his peers" because "[t]here were very few jurors from Philadelphia County and a lack of African American jurors in the jury pool."  (Doc. No. 110 at 26 n.6.)  But as above, Defendant raised this argument previously.  Specifically, he raised it during a Batson challenge during voir dire.  (See Doc. No. 84 at 3:19-23 ("For the record, Mr. Tharrington is an African-American male. He is entitled to a jury of his peers, and when we look at this jury panel, not many of them are his peers.  Very few of these folks are from Philadelphia . . .").)  In response to this challenge, the Court placed an African-American man who had been struck by the Government back on the jury panel which rendered the verdicts.  (Id. at 7:13.)  Thereafter, upon further objection by the parties as to the composition of the jury, the Court reviewed the members of the jury, noting "we have 5 [white] women on the jury . . . two African-American men . . . [and] one Hispanic male," among others.  (Id. at 14:7-22.)  Based on this composition, the Court concluded that "there's a fair mixture of men and women and minorities on the jury" and overruled the objection to the complexion of the jury.  (Id.)  Thus, because Defendant merely makes the same argument that the Court addressed during voir dire, these renewed claims again do not warrant a new trial.

Third, there were no evidentiary errors that warrant a new trial.  Defendant lists several purported evidentiary errors in support of his argument for a new trial:  (1) the Government's expert should not have been permitted to testify because her testimony "was not relevant, not scientifically vetted, and impermissibly influenced the jury's verdict"; (2) evidence from the iPhone Xr should have been suppressed; and (3) "the government's untoward attacks of the

taxpayer cost of the defense expert Jason Silva were unwarranted and improperly influenced the jury." (Doc. No. 110 at 29-30.)

But again, Defendant previously raised the arguments about the Government's expert and the iPhone Xr in a Motion to Exclude Expert Testimony and a Motion to Suppress, respectively. (See Doc. Nos. 26, 36, 65.) On consideration of Defendant's Motion to Exclude Expert Testimony, the Court found that the Government's expert was qualified to testify as an expert on sex trafficking dynamics and that her testimony was relevant. (See Doc. No. 72.) And on consideration of Defendant's Motion to Suppress the iPhone Xr, the Court concluded that the phone was admissible, rejecting the same arguments for suppression that Defendant now raises in the instant Motion. (See Doc. No. 76.) Because the Court stands by its previous conclusions concerning the Government's expert and the iPhone Xr, these arguments do not warrant a new trial. See U.S. v. Flom, 256 F. Supp. 3d 253, 272 (E.D.N.Y. 2017) ("[The defendant] may not use Rule 33 as a vehicle to relitigate pretrial rulings with which he disagrees."); U.S. v. Delva, No. 12 Cr. 802, 2015 WL 629375, at *4 (S.D.N.Y. Feb. 13, 2015) ("A Rule 33 motion is not an appropriate forum to revisit an evidentiary issue that the Court already decided.")

Moreover, the Government's cross-examination of Defendant's expert concerning how much the expert was paid to testify was proper. As indicated by the Government during a side bar, this line of questioning was intended to show the expert's bias in an attempt to impeach his credibility. (Doc. No. 105 at 139:8-9.) And as recognized by the United States Supreme Court, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Del. v. Van Arsdall, 475 U.S. 673, 678 (1986); see also In re: Tylenol (Acetaminophen) Marketing, No. 2:13-md-02436, 2016 WL

3125428, at *7 (E.D. Pa. June 3, 2016) ("The amount of compensation paid to experts is relevant to an expert witness' credibility.")

Furthermore, like the arguments asserted above, Defendant previously raised its objection to the Government's attack on his expert's credibility. (See Doc. No. 105 at 136:25-137:11, 138:6-12.) In response, the Court explained that such cross-examination is allowed because "[t]he fact that an expert witness receives payment for his services . . . goes to the matter of [credibility]." (Id. at 139:13-16; see also id. at 137:25-138:2.) As such, this argument also does not warrant a new trial.

Accordingly, because Defendant was afforded a fair trial, the Court will deny his request for a new trial.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29 and/or a Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33 (Doc. No. 110) will be granted in part and denied in part. An appropriate Order follows.